[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Roberta Mascola and the defendant were married on May 28. 1966 in Hamden, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least one year immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievable without any reasonable prospects of reconciliation. There are two adult children issue of this marriage. The plaintiff does not have any minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on May 5, 1942. The plaintiff does not have any health problems. She was involved in an automobile CT Page 4861 accident in the 1970's and has to be careful of her back as result of that accident. The plaintiff has a Bachelors Degree from Quinnipiac College that she obtained in 1996. The plaintiff obtained an Associates Degree from Quinnipiac College in 1962.
The plaintiff is employed as a secretary. Her average gross weekly income is $410.00. The plaintiff works 10 months out of the 12 month period. She receives her salary over the 10 months that she works. The income shown on her financial affidavit is an annualized income based on the amount that she receives over the course of a year. She gets paid every other week. She has $35.00 weekly deduction for withholding, $25.00 weekly deduction for social security, $15.00 weekly deduction for state tax, $7.00 weekly deduction for medicare and $6.00 union dues. These deductions total $88.00 for a net weekly income of $322.00. She also deducts $40.00 into her TIAA/CREF retirement. Her only remaining liability is for attorney's fees. She has life insurance through SAFCO which is provided by her employment in the amount of twice her annual income. Her TIAA/CREF deferred compensation plan has a value of $10,645.00. It does not pay any weekly amount prior to death. It is similar to a 401K plan.
In the calendar year 1994 the parties had taxable rental income from the property they own at Kiawah Island of $23,368.28. The defendant's W2 wages from UniRoyal Chemical Co., Inc. were $159,381.31 and his total gross wages were $165,246.31. The plaintiff's gross wages at Quinnipiac College were $17,003.14. In the calendar year 1995 the defendant's gross wages from UniRoyal Chemical Co., Inc. were $194,621.52. The plaintiff's gross wages from Quinnipiac College were $16,763.70. In the calendar year 1996 the defendant's gross wages from UniRoyal Chemical Co., Inc. were $204,731.53. The plaintiff's gross wages from Quinnipiac College were $17,994.14. In the calendar year 1997 the defendant's gross wages from UniRoyal Chemical Co., Inc. were $30,717.00 and his gross wages from Crompton and Knowles Corp were $346,146.00. The plaintiff's gross wages from Quinnipiac College were $19,448.00.
The defendant was born on May 27, 1941. During the period of time that this dissolution action was pending, the defendant had two heart attacks and he had bypass surgery in 1998. The defendant obtained his degree from Quinnipiac College in 1963. The defendant was employed by Uniroyal from 1971 until it merged with Crompton and Knowles. Crompton and Knowles entered into an agreement with UniRoyal that also included a transfer of stocks. CT Page 4862 As a result of that agreement the defendant became the owner of approximately 66,000 shares in Crompton and Knowles. When it appeared in 1996 that would be an agreement between UniRoyal and Crompton and Knowles the defendant commenced to look to set up his own business. In 1996 he sold 13,000 UniRoyal shares at $13.00 a share to capitalize the new business that he wanted to enter into in South Carolina. The defendant was aware of the fact that when Crompton and Knowles merged with UniRoyal that he would probably no longer have a job as his skills were not needed. He was 54 years old in 1996 and in excellent health. The parties talked about selling the family home in Hamden, Connecticut and moving to Kiawah Island, South Carolina. When Crompton and Knowles merged with UniRoyal the defendant remained on as a transitional treasurer. He thought that employment would last for approximately two years from August 1996 to August 1998. He was allowed to retire from UniRoyal, Inc. on December 31, 1996. He elected a survivorship benefit with his pension plan with UniRoyal. That pension plan will pay the plaintiff approximately $39,000 annually which amount will be reduced in half in the event the defendant predeceases the plaintiff. In the calendar year 1997 he was working for Crompton and Knowles and running his South Carolina business at the same time. When he started Carolina Specialty Transportation Services he did not know the plaintiff would be seeking a divorce and believed that his marriage was stable. He has invested approximately $1,200,000 into Carolina Specialty Transportation Services. Most of the investment came from the 66,000 shares that he was granted in UniRoyal that later were converted to Crompton and Knowles shares. By January of 1997 those shares were selling for $20-$25 per share. Carolina Specialty Transportation Services still has a negative cash flow. The parties are in dispute as to the value of Carolina Specialty Transportation Services. The court finds from the evidence presented that the highest amount of money that could be obtained at the present time for Carolina Specialty Transportation Services would be under the liquidation method. Under this method, the court finds that the present value of the company is $250,000. The defendant has been using the investment in Carolina Specialty Transportation Services as a write off on his income tax return of a loan. As a result of having that writeoff he will have an income tax refund for the calendar year 1998 of approximately $14,000. He will then have remaining approximately remaining approximately $213,430 to write off against future income. The defendant's employment ended with Crompton and Knowles ended on August 31, 1998. He has since done some pro bono work for Crompton and Knowles. CT Page 4863
The defendant's employment with Uniroyal required him to work in Sao Paulo, Brazil as well as in Rome, Italy and London, England, and Korea and Japan. His work also had him traveling with his wife to Moscow, Paris, Vienna, Salzberg, Munich, Frankfurt, Spain and Sardinia.
The parties did not have any assets when they married. All of their assets were accumulated during their marriage.
The plaintiff owns various jewelry and fur. The parties are in dispute as to the value of her jewelry. From the evidence presented the court finds that the jewelry value is $30,000 and the fur value is $8,000. The plaintiff has a New Haven Savings Bank saving account with a balance of $13,995.00. She also has a New Haven Savings Bank checking account with a balance of approximately $1,500.00. She has two other accounts at the New Haven Savings Bank, one with balance of approximately $1,292.00 and the other with a balance of approximately $44.00. She also has life insurance with Metropolitan Life with a cash surrender value of $2,500.00 and a TIAA/CREF with a value of $10,645.00. She owns a 1994 Mercedes with a fair market value $23,000. She owns two Prudential annuities with a fair market value of approximately $7,700.
The defendant owns a 1991 Alfa Romeo with a value of $7,000 and no loan balance. He has an IRA plan with a total value of $116,400. The cash surrender value of his Split annuity is $32,000. He has a Uniroyal pension with a present value of $564,400. He is the sole stockholder in a Sub-chapter S Corporation known as Carolina Speciality Transportation Services, Inc.
The parties own what had been the family home in Hamden, Connecticut. It has a fair market value of $210,000 and no mortgage. The parties also own property at 26 Atlantic Beach Court in South Carolina. It has a fair market value of $700,000 and a mortgage of $293,000 for an equity of $407,000. The parties own a condominium at 4245 Mariners Watch, South Carolina with a fair market value of $150,000 and no mortgage.
The defendant has a bank account at First Carolina Bank with a balance of approximately $300.000. He owns a Wheat stock account consisting of 40,000 shares with an approximate value per share of $18.50 for a total approximate value of $740,000. The CT Page 4864 approximate margin on the Wheat account is $423,727 leaving a net value of that account of approximately $318,947. He owns 2500 CNK stock options that are vested with a total value of approximately $5,000. He owns CNK stock from his ESOP consisting of 433 shares with an approximate value of $7,800. The cash surrender value of his Prudential Life Insurance policy is $12,550.
The parties entered into the following agreement of March 10, 1999 which the court approves of and finds to be fair and equitable and which partially disposes of some of the assets.
 "1. The parties agree that 222 Ives street has a fair market value of $210,000.
 2. The parties agree that 26 Atlantic Beach Court has a fair market value of $700,000.
 3. The parties agree that 4245 Mariner Watch has a fair market value of $150,000.
 4. The wife shall quit claim both South Carolina properties to the husband. The husband shall have the right to use the properties as collateral. For new loans but agrees not to encumber the 26 Atlantic Beach Court property by more than an additional $150,000.00
 5. The husband shall quit claim the Hamden property to the wife.
 6. The wife shall receive the $7500 remaining in Attorney Parley's escrow account.
 7. While the matter is pending the wife will not encumber the Hamden property."
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provision of § 46b-81 (Carolina Specialty Transportation Services) regarding the issue of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. By way of dissolution of marriage
1. The marriage between the parties is dissolved and CT Page 4865 each party is declared to be single and unmarried.
B. By way of alimony
1. No alimony is awarded in favor of either party.
C. By way of attorney's fees.
 1. No attorney's fees are awarded in favor of either party.
D. By way of property orders.
 1. The defendant is to quit claim to the plaintiff all of his right, title and interest in the property located at 222 Ives Street, Hamden, Connecticut in accordance with a stipulation of the parties dated March 10, 1999.
 2. The plaintiff is to quit claim to the defendant all of her right, title and interest in the property located at 26 Atlantic Beach Court, South Carolina in accordance with a stipulation of the parties dated March 10, 1999.
 3. The plaintiff is to quit claim to the defendant all of her right, title and interest in the property located at 4245 Mariners Watch, South Carolina in accordance with a stipulation of the parties dated March 10, 1999.
 4. All of the jewelry and fur owned by the plaintiff is awarded to the plaintiff.
 5. All of the New Savings Bank accounts shown on the plaintiff's financial affidavit including the savings account shown with a balance of $13,995 are assigned to the plaintiff.
 6. The cash surrender value of the Metropolitan Life policy shown on the plaintiff's financial affidavit is awarded to the plaintiff.
 7. The 1994 Mercedes shown on the plaintiff's financial affidavit is awarded to the plaintiff.
8. The TIAA/CREF account shown on the plaintiff's financial affidavit is awarded to the plaintiff. CT Page 4866
 9. The Prudential annuities shown on the plaintiffs financial affidavit is awarded to the plaintiff.
 10. The Wheat IRA shown on the defendant's financial affidavit under the category "IRA and 401K" is awarded to the plaintiff.
 11. The 1991 Alfa Romeo shown on the defendant's financial affidavit is awarded to the defendant.
 12. The First Carolina Bank account shown on the defendant's financial affidavit is awarded to the defendant.
 13. All of the defendant's interest in Carolina Specialty Transportation Services is awarded to the defendant.
 14. The cash surrender in the Prudential insurance policy shown on the defendant's financial affidavit is awarded to the defendant.
 15. The Wheat First Union joint account that has a balance of approximately $4,000 is ordered divided equally between the parties.
 16. All of the defendant's interest in his UniRoyal pension plan is assigned to the plaintiff by QUADRO. The court retains jurisdiction over any disputes that may exist involving the language to be used.
 17. The CNK ESOP stock shown of the defendant's financial affidavit with an approximate value of $7,800 is ordered divided equally between the parties.
 18. The 2500 CNK options shown on the defendant's financial affidavit are ordered divided equally between the parties.
19.There are some very minor assets that may still exist consistent of a State of Connecticut tax rebate of $150.00, a U.S. Surgical payment of approximately $8.35, and a Nationwide Insurance payment of $53.00. Any of those assets which still exist are ordered divided CT Page 4867 equally between the parties.
 20. The plaintiff is awarded one half of the Wheat Stock account shown on the defendant's financial affidavit as having a value of $318,946. The one half awarded to the plaintiff is after first deducting the margin account with the plaintiff to then receive the number of shares required to equal one half of the remaining balance. The defendant is to hold the plaintiff harmless on the margin account.
 21. The split annuity shown the defendant's financial affidavit with a value of $32,000 is ordered divided equally between the parties.
 22. The court awards to the plaintiff the following items of personal property located at the defendant's residence in South Carolina and the defendant is to arrange for their delivery to the plaintiff at his expense:
a. alpha Gamma Society Award Framed;
b. music from Corsica;
c. scarves from Greece;
d. pillows and towels from Sardinia;
e. earrings from Greece if able to be located;
g. Italian pottery;
h. fiesta dishes;
i. soap dishes;
j. two dishes from Greece;
k. approximately 10 books and cookbooks;
l. Wrought-iron table with Italian tiles.
23. The defendant is awarded the following items of personal property located at the family home in Hamden, CT Page 4868 Connecticut and the plaintiff is to arrange for their delivery to the defendant at her expense:
a. Omega watch (if able to be located);
 b. various personal books including book of Churchill's Memoirs and papers belonging to the defendant and various articles of clothing belonging to the defendant;
c. Tissot watch;
d. Ginori coffee set;
e. Louis X1V desk;
E. Miscellaneous orders.
 1. Counsel for the plaintiff is to prepare, the judgment file within 30 days and send it to counsel for the defendant for signature and filing.
Sidney Axelrod Judge of the Superior Court